Smith, J.
As we understand (though no statement as to this was made by counsel on either side that we recall), the only question now before this court is as to the proper distribution of the fund of $3,000 paid into court by the Supreme Lodge, Knights and Ladies of Honor. Some of the same questions presented as to this fund would also arise as to the distribution of the fund of $1819 paid into court by the Supreme Council of the Order of Chosen Friends, which in the same case was disposed of by the court of common pleas. But this fund was distributed by order of the said court at the April term 1899, viz.: on May 31, 1899, and to this decree no exception was taken, and no notice of appeal given, but the case was then continued and at the July *467 term, 1899, viz,, on August 3, 1899, a further decree was entered distributing the $3,000 fund, and thereupon in due ■time the plaintiff and the Gerke Brewing Company, a defendant, gave notice of their intention to appeal to the circuit court “so much of this cause as affects each”, and ■thereupon a bond for the appeal was filed by the plaintiff, and at the trial in this court, evidence was heard as to the claims of the various parties to the $3,000 fund, and as to these questions we state our conclusions.
Catharine Cassman was the beneficiary named in a certificate issued by the Supreme Lodge, Knights and Ladies •of Honor, to Peter Cassman, her husband, a member of said Lodge, and on whose death, by the terms .of said certificate, she became entitled to receive from said order the sum of $3,000, A few days after the death of her husband, and after she thus became entitled to said insurance money, by a written paper signed by her and delivered to M. Ottman & Company, and in consideration of a loan of $300 then made to her by M. Ottman & Company, and for which •she at the time executed and delivered her promissory note, she agreed that Ottman & Company should hold said certificate as collateral security for said $300, and for other loans which the firm from time to time had made to her. The fact was, that for each of said loans as they were made, like written agreements were made as to each of them, and the certificate had been turned over to said firm, and was in its possession when the first and all the other loans were made, and is still held by it, no part of any of said loans having been repaid. And one of the principal questions in the case is whether under the law and the facts in the case, the firm of M. Ottman & Oo. are entitled to a lien on this fund as against all or any of the parties to the case,
There is another question as to the assignment of this certificate. Some time before the first transaction between Mrs. Cassman and Ottman <fe Company, A. C. Clements, a stepson of Peter Cassman, had loaned to Mrs. Cassman $300 and taken her note therefor, and to secure him for this loan, and others which it was expected that he would make to her for the support of herself and family, by an indorsement on the original certificate, she transferred and assigned to said C. Clements all her rights under the same, and this *468 was delivered to him. It appears that he was unable to make other loans to her as she needed them, and an arrangement having been made between Mrs. Cassman and Ottman & Company, by which they were to make such loans on the credit of said certificate, Clements turned over the certificate to Mrs. Cassman, and it was delivered to said firm with the agreement between them all, that the lien of Ottman & Company thereon, for advances made and to be made by said firm to Mrs. Cassman, should have priority over his claim of $300, but otherwise his claim was not to be affected. The question as to this is whether Clements has a lien thereon or against the fund for his $300 and interest.
On the 17th of June, 1898, about ten days after the death of Peter Cassman, and after the last loan by Ottman & Company to Mrs. Cassman, the plaintiff company filed in the court of common pleas its petition in this case, in the nature of a creditors’ bill, alleging that it had obtained a judgment against Mrs. Cassman for a large sum; that she' was insolvent, and had no property subject to execution and which could be reached by process of law. The petition was filed against Mrs. Cassman and the two associations, before named, alleging that each of said societies was indebted to Mrs. Cassman by reason of her being a beneficiary on, certificates severally issued by them on the life of Peter Cassman who had recently died, and seeking the appropriation of the said insurance to the payment of said claim of the plaintiff. Afterwards Ottman & Company and C. Clements were made parties and set up their claims, and other creditors of Mrs. Cassman were brought in. Mrs. Cassman by her answer admitted the claims of Ottman & Company and C, Clements, but contested the rights of the other creditors to the certificate or the fund. Each of the two orders admitted liability on its certificate, and paid th& money into court. In disposing of the $1819.00 fund, the court allowed, apparently without objection, $500 to Mrs. Cassman in lieu of a homestead, and this we suppose was-paid to her from that fund. During the pendency of the case in the common pleas court, Mrs. Cassman died, and her administrator was made a party, and claims' that after payment of the amount due to Ottman & Company and *469 Clements, the balance goes to him as exempt property, and that the debt of the plaintiff being one as to which she had pledged certain specific articles of her separate estate, and the fund in dispute being after-acquired separate estate, that it is not ilable for her debts.
The court of common pleas by its decree, ordered that after the payment of the costs, the claim of Ottman & Company be first paid, then the debt of Clements, and that the balance be applied to the payment of the claim of the plaintiff. Was this right?
We are of the opinion that on the death of Peter Cassman, his widow, Catharine, the beneficiary of this policy, had the right to pledge the certificate for the payment of the loan of $300 made after his death, and also to pledge it for the loans made by her prior to the death of her husband. And this she did. It was a chose in action, due and payable to her at that time, and we know of no principle of law which would prevent her from disposing or transferring it to any person in good faith and for a valuable consideration. Nor do we see any good reason why the beneficiary before the death of her husband could not legally, if in good faith and for a valuable consideration, transfer her interest in the certificate, or pledge it for the payment of a valid debt. Of course, if the transaction was in the nature of a wagering policy, whereby in effect the transferee became the holder of a policy on a life in which he had no interest, or for an amount above his actual interest, such a transaction would not be upheld, but there is nothing of that character in this case. The claim of the counsel for the plaintiff that to make such an assignment valid, notice thereof to the insurer must be given, we think is not sound; there is no requirement of this kind. If the insurer without knowledge of those assignments had paid the insurance money to Mrs. Cassman, the payment we suppose would be good, but this was not done. In our judgment, then, the holding of the court of common pleas, holding that Ottman & Company were to be first paid and then Clements’ claim, was right.
Was the plaintiff then, as next in priority, entitled to receive the residue after the payment of costs?
The claim of the administrator of Mrs. Cassman is that *470 ■ under the laws of this state the fund in court was absolutely ■ exempt from being by any process of law applied to the payment of the debts of Mrs. Cassman. It is conceded in this case that the Supreme Lodge, Knights and Ladies of Honor, was a fraternal beneficiary association such as is described in section 3631-11, Revised Statutes, formed for the sole benefit of its members and their beneficiaries, passed April 27, 1896, volume 92, 360. Section 3631-12 provides that any such society, “now operating in this .-state, and having lodges, etc., therein may continue their business, provided they hereafter comply with the provisions of this act regulating annual reports,’’etc. The •society in question had for years before the date of this law, been operating in this state, having a lodge, etc., and the certificate in question had been issued and been in force from December 3, 1889. The company had not in fact made the requisite reports up to the death of Peter ■Cassman, in June 1898, but kept on doing business without objection on the part of the state. Section 3631-22 provides for a penalty for a company doing business in the state without complying with the provisions of the statute as to reports, etc. In 1899 this company did comply with ■the statute.
Section 3631-18 provides, “The money or other benefit, charity, relief or aid to be paid, provided or rendered by any association authorized to do business under this act, shall not be liable to attachment by a trustee, garnishee, or other process, and shall not be seized, taken or appropriated or applied by any legal or equitable process, or by operation of law, or to pay any debt or liability of a certificate holder, or of any beneficiary named in a certificate, or any person who may have any rights thereunder.
These provisions, the administrator claims, exempt this fund in the hands of the court, or at any time after it should be paid to the beneficiary, if she were alive, or if paid to him, from application to the payment of her debts. This the plaintiff denies on two grounds: First, that such is not the meaning of the section quoted; and second, that this order or company was not authorized at the time of the • commencement of this suit to do business in this state, and ■that the section does not apply to this case.
*471 Does the fact that this association which by the statute •of April 27, 1896, being then engaged in carrying on its business in this state, continued to do so for some time after without complying with the statute, make the provisions of section 3631-18. applicable to its policies or certificates? We think this strict construction should not be ¡placed upon it, if it possibly can be avoided. It can hardly be supposed that it was the intention of the legislature to ■deprive innocent beneficiaries of such an association of a right given to the holders of certificates in associations doing business in the state, duly authorized to do so. And the fact that a penalty is provided against the company who does without authority carry on such business, strengthens this idea.
But if this be so, and the section is applicable to this case, what is the meaning of it? Was it the intention of the legislature forever to exempt the fund arising from" such insurance, no matter how great it may be, from application by any process or operation of law to the payment of the debts of the beneficiary, before or after it comes into his hands? We think not. There is no limitation in it as to the amount of such insurance, and a large amount might be -affected. The meaning of the section is not clear, but we are of the opinion that the intention was to prevent it being so appropriated before the death of the person whose life is insured, to “pay the debts or liability of a certificate holder or of any beneficiary named in a certificate, or any person who may have any rights thereunder,” And that after it comes into possession of the party entitled to it, such person has only the same rights of exemption as to that fund, which he has as to the other property, A claim is also made by the counsel for the administrator that the claim of the plaintiff against his intestate which accrued in 1896, is exempt for another reason. It appears that the claim of plaintiff against Mrs. Cassman arose in 1896 or 1897, and that it was a debt, as is claimed, which arose on a contract as to her separate estate, and for which she pledged "all the separate estate then owned by her. This -was sold and a judgment rendered against her for the deficiency, Afterwards she became entitled to this insurance ¡money which she claims was after-acquired separate estate, *472 and that she or it was not liable for the old debts.
L. J. Bolle, for Plaintiff.
Bates & Glen Bening, for Defendant.
We think this claim not well founded Since the act of March 19, 1887, a married woman may make a contract with any person which she might make if unmarried, and for any debt contracted by her after that date, her property acquired after that date, and while a feme sole, is liable to . be seized as her general property and subject to the payment of her debts.
What then is the effect of our holding as to the distribution of the residue of the fund in court after the payment of the claims of Ottman & Company and of Clements? As to this the members of the court are hardly agreed. Judges Swing and G-iffen are of the opinion that as the money had not reached the hands of Mrs. Oassman at the time plaintiff’s action was commenced, that this action was improperly brought and that the plaintiff obtains no priority over any other general creditor. I incline to the opin- ■ ion that the payment of the money into court was in effect a payment to her, and further that the provisions of the section were intended only to prevent the attachment or garnishment of-the fund, or by creditor’s bill during the life of the party insured, and that on his death the insurance claim might be so subjected, before its payment to the beneficiary. -But in accordance with the holding of the majority a decree may be entered that the amount of the fund remaining after the payment of the Ottman & Company and Clements claims be paid, to the administrator of the estate of Mrs. Cassman, to be by him administered according to law.